BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Victor Sandoval (SBN 344461)
Victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

*Attorneys for Defendant*
BB OpCo, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KIEREN KISHNANI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BB OPCO, LLC d/b/a Brooks Brothers, a Connecticut limited liability company, and DOES 1 though 25, inclusive,

Defendants.

Case No. 2:24−cv−09629-ODW_JC

**DEFENDANT BB OPCO LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Otis D. Wright II
Date: February 10, 2025
Time: 9:30 a.m.
Place: Courtroom 9C, 350 W. 1st Street, Los Angeles, California 90012

Complaint Filed: November 7, 2024
Complaint Served: November 12, 2024
Trial Date: None set

**TO ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE** that on February 10, 2025 at 9:30 a.m., or as soon thereafter as the Motion may be heard in Courtroom 9C of the above entitled Court located at the First Street U.S. Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, the Honorable Otis D. Wright II presiding, Defendant BB OpCo, LLC ("BB OpCo") will, and hereby does, move the Court for an order dismissing this action in its entirety with prejudice and without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 20, 2024.

BB OpCo LLC moves to dismiss Plaintiff KIEREN KISHNANI'S Class Action Complaint ("Complaint") under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiff lacks Article III standing. Specifically, Plaintiff's Complaint fails to allege any injury arising from Plaintiff's alleged website visit.

In addition, BB OpCo moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to state a claim upon which relief can be granted. Specifically, the Court should dismiss Plaintiff's claim because the FAC fails to state facts sufficient to constitute a cause of action against BB OpCo.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, BB OpCo's Request for Judicial Notice filed concurrently herewith, and the exhibits attached thereto, and all pleadings and papers in the Court's file, the record and files herein, and upon such oral argument as may be made at the hearing on the Motion and such other evidence as may be admitted at the time of the hearing on the Motion.

///

///

///

DATED: January 10, 2025

BLANK ROME LLP

By:/s/ Ana Tagvoryan
Ana Tagvoryan
Victor Sandoval
Attorneys for Defendant
BB OpCo LLC

# TABLE OF CONTENTS

Page


I. INTRODUCTION ....................10

II. SUMMARY OF ARGUMENT ....................12

III. STATEMENT OF FACTS ....................13

IV. LEGAL STANDARDS ....................15

V. PLAINTIFF FAILS TO ALLEGE SHE SUFFERED AN INJURY-IN-FACT. ....................15

VI. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6) ....................18

A. The Trap & Trace Laws Are Inapplicable Here. ....................18

1. The Trap and Trace Laws Are Intended to Apply Only to Devices Attached to Telephone Lines. ....................18

2. CIPA's Legislative History Demonstrates that Website Tools are Not Trap and Trace Devices. ....................21

3. Other California Legislation Governs the Use of Website Analytics Tools. ....................22

B. Section 637.2's Private Right of Action Does not Apply to Section 638.51. ....................23

C. Plaintiff Fails to Allege Facts Supporting Statutory Standing Under Section 637.2. ....................25

D. Plaintiff Fails to Allege Facts Supporting the Claim that BB OpCo Installed or Used a "Trap and Trace Device" Within the Meaning of CIPA. ....................27

E. Plaintiff Fails to Plead BB OpCo Installed the TikTok Pixel in California. ....................29

F. BB OpCo Is Exempt As The Website Operator And/Or Because It Was a Party to the Communication. ....................30

VII. CONCLUSION ....................31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Animal League Defense Fund v. Mendes*,
160 Cal.App.4th 136 (2008) ....................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................15

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. 2021) ....................30

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ....................16, 17

*Cairns v. Franklin Mint Co.*,
24 F. Supp. 2d 1013 (C.D. Cal. 1998) ....................15

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Sup. Sep. 09, 2024)....................21, 22, 30

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ....................15

*Coburn v. Sievert*,
133 Cal. App. 4th 1483 (2005) ....................23

*Columbia Pictures Indus. v. Bunnell*,
2007 WL 2080419 (C.D. Cal 2007)....................13, 30

*Daghaly v. Bloomingdales.Com, LLC*,
2024 WL 5134350 (9th Cir. Dec. 17, 2024)....................13, 17, 18

*Dana Hughes v. Vivint, Inc., et al.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) (tentative ruling adopted dismissing case 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024)) ....................13, 17

*In re DoubleClick Inc. Privacy Litigation*
154 F.Supp.2d 497 (S.D.N.Y. 2001)....................31

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................16

*Glob. Naps, Inc. v. Bell Atl.-New Jersey, Inc.*,
287 F.Supp. 2d 532 (D.N.J. 2003) ....25

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....13

*Heiting v. F21 OPCO, LLC*,
No. 24STCV20340 (Cal. Sup., Nov. 18, 2024 Minute Order) ....28

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....26

*Levings v. Open Text Corporation*,
No. 24STCV05440 ....30, 31

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ....17

*Limon v. Circle K Stores Inc.*,
84 Cal. App. 5th 671 (2022), review denied (Jan. 25, 2023) ....26

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....15

*Mayron v. Google LLC*,
54 Cal.App.5th 566 (2020) ....25

*Moody v. C2 Educ. Sys. Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024) ....24

*Moore v. Superior Court of Riverside Cnty.*,
58 Cal.App.5th 561 (2020) ....23

*People v. Giordano*,
42 Cal. 4th 644, 170 P.3d 623 (2007) ....28

*Rodriguez v. Fountain9, Inc.*,
2024 WL 3886811 (Cal. Sup. July 09, 2024), 2024 WL 4905217 (Cal. Sup. Nov. 21, 2024) ....17

*Rules and Policies Regarding Calling No. Identification Serv.-Caller ID*
9 F.C.C. Rcd. 1764 (1994) ....31

*S. Bell Tel. & Tel. Co. v. Hamm*,
306 S.C. 70 (1991) ....31

*Saracco Tank and Welding Co. v. Platz*,
65 Cal.App.2d 306 (1944) ....31

*Smith v. Maryland*,
442 U.S. 735 (1979) ........ 28

*Sparshott v. Feld Ent., Inc.*,
311 F.3d 425 (D.C.Cir. 2002) ........ 31

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ........ 29, 30

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 27

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ........ 16

*United States v. Jean*,
207 F.Supp.3d 920 (W.D. Ark. 2016) ........ 30

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) ........ 25

*Vasquez v. Solo 1 Kustoms, Inc.*,
27 Cal. App. 5th 84 (2018) ........ 23

*Vicko Ins. Services v. Ohio Indem. Co.*,
70 Cal.App.4th 55 (1999) ........ 24

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F.Supp. 3d 1204 (C.D.Cal. 2017) ........ 20

*Waits v. Pacifica Villa Royale, LLC*
(Cal. Ct. App. Aug. 26, 2008) 2008 WL 3906679 ........ 24

*Wisconsin Professional Police Ass'n v. Public Service Commission*,
205 Wis. 2d 60 (Wis. Ct. App. 1996) ........ 31

**Statutes**

Cal. Civ. Code
§ 1798.100 ........ 22
§ 1798.140(v)(1) ........ 22
§ 1798.150(a) ........ 22

Cal. Penal Code
§ 629.51(a) .....28, 29
§ 629.51(a)(1) .....29
§ 629.51(a)(2)(C) .....29
§ 629.51(a)(3) .....29
§ 629.51(a)(4) .....29
§ 631 .....20, 31
§ 631(a) .....31
§ 632 .....20, 31
§ 632.5 .....25
§ 632.5(a) .....25
§ 633 .....20, 31
§ 633.02 .....20, 31
§ 637.2 ..... *passim*
§ 638.50(a) .....29
§ 638.50(c) .....10, 19, 28
§ 638.51 ..... *passim*
§ 638.51(a) .....10
§ 638.51(b) .....30
§ 638.51(b)(1) .....30
§ 638.51(b)(5) .....30, 31
§ 638.52(c) .....19, 28
§ 638.52(d)(1) .....19
§ 638.52(d)(3) .....19, 20
§ 638.55 .....24

**Other Authorities**

Fed. R. Civ. P.
§ 12(b)(1) .....15, 18
§ 12(b)(6) .....15, 18

## I. INTRODUCTION

At its core, this case is an ill-founded attempt to apply a telephone surveillance statute in a manner that its text does not support and it was never intended: to criminalize commonly used website functionality and analytics tools. Kieren Kishnani ("Plaintiff") sues BB OpCo, LLC ("BB OpCo" or "Defendant"), claiming that one such website tool—the TikTok pixel—is actually a "trap and trace" device under Penal Code § 638.51 ("Section 638.51"). Plaintiff's attempt to apply Section 638.51 to commonplace website technology and information that is communicated every day on every website should be rejected.

Sections 638.50 to 638.55 (the "Trap & Trace Laws") were enacted to prohibit law enforcement surveillance of calling and routing information (phone numbers) between an individual and a third-party without a court order. *See* Cal. Pen. Code § 638.51(a). The legislative history makes clear that the express purpose of the Trap & Trace Laws is "to authorize state and local law enforcement to seek emergency orders for pen registers/trap and trace devices ***used in telephone surveillance***, while requiring as a precondition a standard of evidence higher than under federal law." RJN Ex. A, p.4. Website functionality software simply does not fit within the purview of the statute. Even if it did, Plaintiff fails to identify the various elements necessary for a Section 638.51 claim to survive

The statute requires three independent allegations of (1) "electronic or other impulses" that identify, (2) the "signaling information," and (3) are reasonably likely to identify the source of the electronic communication. Cal. Penal Code § 638.50(c). Plaintiff's theory that the TikTok pixel captures electronic impulses to identify the "originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication," is plainly deficient. The information Plaintiff alleges was collected, "device and browser information, geographic information,

referral tracking, and url tracking" do not qualify as either electronic impulses ***or*** signaling information. And, to the extent Plaintiff claims these pieces of information help identify the website user, personally identifying information is not the type of ***source*** information contemplated by the statute.

Moreover, Plaintiff's Complaint entirely ignores that website analytics tools cannot qualify as trap and trace devices or processes because the Trap & Trace Laws apply only to devices attached to telephone lines—not internet software. Not only do the law's text and legislative history make clear that only devices connected to telephone lines may qualify as a trap and trace device, the California legislature has already implemented separate legislation, the California Consumer Privacy Act, governing the collection of "personal information" by website analytics software. Imposing conflicting and inconsistent obligations across these statutes is antithetical to California's strong preference to interpret statutes consistently.

Even if a trap and trace device could apply to internet software (it does not), and even if the TikTok software satisfied its elements (it does not), BB OpCo would nevertheless be exempt from liability either as the provider of an electronic communication service, or as a party to the communication itself. As BB OpCo provides the Website—and allows users to communicate with it—it is the provider of an electronic communication, which is expressly permitted to use a trap and trace device. Otherwise, the statute does not and cannot apply to Defendant as a participant to the communication (i.e., the party that picks up and responds to the electronic impulses/signals on the other end). In either case, BB OpCo is the wrong party here as there is no law that states that a website visitor must remain anonymous to a website operator. The Trap and Trace Laws are no exception.

Finally, notwithstanding all of the above defects, Plaintiff's Complaint fails for a threshold reason. She does not and cannot allege facts required to allege a concrete injury and establish standing under Article III of the United States Constitution.

Plaintiff does not and cannot, assert an expectation of privacy recognized at common law, or any other cognizable harm. Plaintiff's Complaint should be dismissed with prejudice.

## II. SUMMARY OF ARGUMENT

In this case, Plaintiff alleges that BB OpCo purportedly used "TikTok Software" on its website, www.brooksbrothers.com (the "Website"), and claims in wholly conclusory fashion that the software gathers "device and browser information, geographic information, referral tracking, and url tracking…to send user details to TikTok." (Compl. ¶ 11.) Plaintiff readily admits that the so called TikTok software operates on the Website—and is not a device attached to a telephone line—thus falling outside the purview of the Trap & Trace Laws as a matter of law. The collection of personal information by website analytics tools is governed by other California statutes, including the Consumer Privacy Act; not the criminal prohibitions on trap and trace devices.

Even if Plaintiff could get past this threshold defect, there is not a single specific detail alleged in the Complaint about Plaintiff's own interactions with the Website or the TikTok software, and it is unclear as to what, if any, "user details" were supposedly collected from Plaintiff herself. Moreover, the general data points (device, location, and referral information) identified by Plaintiff as part of her vague narrative of "fingerprinting" do not fall within the purview of the statute. (Compl. ¶ 10.) And, equally problematic, to the extent Plaintiff claims that the TikTok software collects geographic information and the contents of Plaintiff's communications with the Website, such information falls outside of Section 638.1 on its face.

At bottom, the Penal Code's prohibition on trap and trace devices does not apply to standard *website-specific* advertising or tracking tools used by the website operator itself. Instead, the statutory language and legislative history make clear that a "trap and trace device" is intended to apply to surveillance devices used to track

calling and routing information (phone numbers) between the complainant *and others*. A software tool that collects record information, such as location, referrer information,[1] and device types used for website-specific interactions does not fall within the purview of the statute. This is further supported by the fact that the statute specifically exempts communication service providers like BB OpCo, which undisputedly is the website operator.

Plaintiff's Complaint is also deficient because there is no "injury" as required to establish standing under Article III of the United States Constitution. Courts in this district and the Ninth Circuit have dismissed effectively identical complains for lack of Article III standing. *See Dana Hughes v. Vivint*, *Inc., et al.*, 2024 WL 5179916 (C.D. Cal. July 12, 2024) (tentative ruling adopted dismissing case 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024)); *Daghaly v. Bloomingdales.Com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024).

## III. STATEMENT OF FACTS

BB OpCo operates the Website, an "online platform that sells clothes for men, women, and children." (Compl. ¶¶ 5, 8.) Plaintiff is a California resident who allegedly "visited Defendant's website within the statute of limitations period," but otherwise provides zero detail as to the date, nature or length of her visit to the Website, whether she made a purchase on the Website, or whether she held an account with BB OpCo. (*See id.* ¶¶ 4, 9.)

---

[1] Plaintiff omits any reference to collection of her "IP address" in her complaint, presumably because multiple courts have conclusively rejected the theory that collection of an IP address could implicate CIPA's trap and trace provisions. It does not. *See Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal 2007). Instead, Plaintiff attempts to muddy the waters by referencing vague data points such as "device and browser information, geographic information, referral tracking, and url tracking." (*See* Compl. ¶ 11.) Much like an IP address, this is precisely the same type of general data points required to facilitate website interactions in which a website user simply maintains no privacy interest. *See Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("IP addresses 'are voluntarily turned over in order to direct the third party's servers,' ... so no reasonable expectation of privacy attaches to them.").

As to BB OpCo's purported conduct, Plaintiff alleges in wholly conclusory fashion that BB OpCo "installed on its Website software created by TikTok in order to identify website visitors." (*Id.* ¶ 9.) Plaintiff concludes that the TikTok software "acts via a process known as 'fingerprinting'" and "gathers device and browser information, geographic information, referral tracking, and url tracking by running code or "scripts" on the Website to send user details to TikTok." (*Id.* ¶¶ 10-11.) Plaintiff claims that the Website "instantly sends communications to TikTok when a user lands, and every time a user clicks on page." (*Id.* ¶ 12.) But the Complaint does not identify what "communications", if any, are actually sent to TikTok or how. Tellingly, Plaintiff does not allege that any of her own information was captured by the TikTok pixel, or that it otherwise identified her. In sum, the Complaint's allegations are hopelessly generic as to how the TikTok software purportedly functions.

Paragraph 12 of the Complaint is even vaguer, and purports to display unreadable and patently indecipherable screenshots of "electronic impulses" sent to TikTok. (*See id.* ¶ 12). The screenshot shows no such thing. The Complaint never identifies what specifically the "electronic impulses" are, or how or if they are sent to TikTok. Importantly, the screenshot does not purport to depict Plaintiff's own interactions with the Website.

Based solely on the above conclusory allegations, Plaintiff concludes that the TikTok software qualifies as a "trap and trace device" under Section 638.51, by doing nothing more than parroting the statutory language. (*Id.* ¶¶ 14-15.) There is also not a single allegation in the Complaint claiming that Plaintiff suffered any injury from BB OpCo's purported conduct, notwithstanding that an injury is required under Article III of the United States Constitution and Section 637.2 of CIPA. Nevertheless, Plaintiff's Complaint improperly requests "statutory damages pursuant to CIPA," Section 637.2 attorneys' fees and costs, and injunctive relief. What that injunction would look like, however, is a mystery.

## IV. LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff bears the burden of establishing standing under Article III of the Constitution, which requires an "injury in fact" that is both "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citation omitted). The injury must be "fairly traceable to the challenged action of the defendant," and it must be likely "that the injury will be redressed by a favorable decision." *Id.* at 560-61.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim is proper where a plaintiff fails to allege sufficient facts under a cognizable legal theory. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*." *Id.* (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a court is not required to "accept 'conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.'" *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1023 (C.D. Cal. 1998).

## V. PLAINTIFF FAILS TO ALLEGE SHE SUFFERED AN INJURY-IN-FACT.

Plaintiff's Complaint should be dismissed under Rule 12(b)(1). To have Article III standing, Plaintiff is required to show that Plaintiff has suffered an injury that is

"(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2199 (2021). A statute that gives the plaintiff a right to sue for violation of the legislation does not automatically establish standing. *Id*. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* The Supreme Court "has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* The legislature cannot "simply enact an injury into existence[.]" *Id.*

Plaintiff fails to allege facts establishing an injury in fact. Notably, Plaintiff does not plead any facts regarding what information of Plaintiff allegedly was collected by TikTok on the Website. Plaintiff does not contend that Plaintiff entered her email address or phone number into any fields on the Website or that the TikTok pixel captured that personal information, nor does Plaintiff allege that Plaintiff was referred to the Website from another URL, such that the TikTok pixel would have captured "referral tracking" or "url tracking" information.[2] All Plaintiff pleads is an abstract and hypothetical injury, which wholly fails to establish standing. *TransUnion*, 141 S. Ct. at 2199.[3]

---

[2] Plaintiff may argue that Section 638.51 "codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (cleaned up). But Plaintiff's pleading fails to identify any harm to a protected privacy interest and thus cannot establish standing. *See, e.g., Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023) (dismissing complaint for lack of standing where plaintiff failed to identify any specific personal information disclosed that implicates a protectible privacy interest).

[3] Having otherwise anonymous browsing data be linked to Plaintiff's identity through "fingerprinting" is still not enough to find concrete injury. For example, Plaintiff does not even allege that Plaintiff has a TikTok account that would allow TikTok's purported collection of Plaintiff's anonymous information from visiting the Website to be associated with Plaintiff. If Plaintiff does not have a TikTok account, Plaintiff's identity cannot be connected to Plaintiff's browsing activity.

Indeed, a Court in this district recently dismissed a claim—nearly identical to Plaintiff's—asserting that a defendant violated Section 638.51 by installing the TikTok pixel on its website, holding that the plaintiff did not demonstrate an injury-in-fact and thus failed to establish standing. *Vivint, Inc.,* 2024 WL 5179916.[4] The Court found that Plaintiff could not establish standing where, as here, the complaint was "vague as to many, if not all, of the details surrounding [plaintiff's] use of the Website and what specific information was captured by the TikTok Software." *See id.* Here too, Plaintiff has omitted any specific information that BB OpCo or TikTok allegedly collected from Plaintiff.

Even more recently, the Ninth Circuit has confirmed that a plaintiff who complains of third-party website analytics software but alleges only that she visited a website, does not allege an injury and thus lacks standing. *Bloomingdales.Com, LLC*, 2024 WL 5134350, at *1. There, the plaintiff made only "general allegations" about "the types of information Bloomingdales.com collects and the mechanisms of collection" but the plaintiff's "allegations about her own interactions with the Bloomingdales.com website [we]re sparse. She allege[d] only that she 'visited' and 'accessed' the website… She d[id] not assert, for example, that she made a purchase, entered text, or took any actions other than simply opening the webpage and then closing it." *Id.* As a result, the Ninth Circuit found that she had not alleged an injury sufficient to have standing. *Id.* at *1-2. The allegations here are indistinguishable. All that Plaintiff alleges about her own interactions with the Website is that she visited it—nothing more. The remainder of the "general allegations" about "the types of

[4] *See also Lightoller v. Jetblue Airways Corp.,* 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (dismissing for lack of standing because the plaintiff failed to allege she disclosed any personal information); *Byars v. Sterling Jewelers, Inc.,* 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (plaintiff lacked standing where she failed to allege that she disclosed any sensitive information); *Rodriguez v. Fountain9, Inc*., 2024 WL 3886811, at *4 (Cal. Sup. July 09, 2024) (no standing under 638.51 for similar complaint), 2024 WL 4905217, at *4 (Cal. Sup. Nov. 21, 2024) (finding same without leave to amend).

information [that the TikTok pixel can] collect[] and the mechanisms of collection" do not suffice. *Id.* at *1-2.

As a result, the Court should dismiss this case under Rule 12(b)(1) because Plaintiff has failed to allege facts sufficient to establish an injury as required under Article III of the United States Constitution.

## VI. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6)

Plaintiff's Complaint should also be dismissed under Rule 12(b)(6). As an initial matter, the text, legislative history, and legislative context of the Trap & Trace Laws make clear that they do not apply to the website analytics tools at issue here. Even if they did, Plaintiff is incorrect that Section 637.2 provides a private right of action to sue for violations of Section 638.51. And, even if Plaintiff were correct, Plaintiff has not, and cannot, state a claim insofar as Plaintiff fails to allege facts supporting the allegation that BB OpCo installed a "trap and trace device or process" within the meaning of the statute, the requisite scienter, and that BB OpCo installed the TikTok pixel in California. Finally, even if Plaintiff had made these essential allegations, BB OpCo is nevertheless exempt from the Trap and Trace Laws as a provider of electronic or wire communication service and because BB OpCo is a party participant who consented to the TikTok pixel.

### A. The Trap & Trace Laws Are Inapplicable Here.

#### 1. The Trap and Trace Laws Are Intended to Apply Only to Devices Attached to Telephone Lines.

Plaintiff's novel theory fails because the plain language and legislative history of the Trap & Trace Laws make clear that a trap and trace device or process must be attached to a telephone line. A "trap and trace device" is defined as a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not

the contents of a communication." Cal. Penal Code § 638.50(c). Section 638.51 provides that "a person may not install or use a pen register or a trap and trace device ***without first obtaining a court order pursuant to Section 638.52 or 638.53***." *Id.* § 638.51 (emphasis added). Considering the statute in context, Sections 638.52 and 638.53 confirm unequivocally that the TikTok software, and other web-based software like it, simply are not covered as a trap and trace device or process.

Section 638.52—invoked directly in Section 638.51—makes clear that the legislature intended only processes and devices attached to telephone lines to qualify under its trap and trace provisions. For example, Section 638.53 requires that the court order authorizing a trap and trace device shall specify a specific telephone line:

> (1) The identity, if known, of the person to whom is leased or in whose name is listed the ***telephone line*** to which the pen register or trap and trace device is to be attached. . . .
>
> (3) ***The number and, if known, physical location of the telephone line*** to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order.

Cal. Penal Code § 638.52(d)(1), (3) (emphases added). Section 638.52(c) likewise limits disclosure of information acquired in the context of a telephone line: "the authority for a pen register or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined ***from the telephone number***." *Id.* § 638.52(c) (emphasis added). The repeated references to telephone lines and telephones in the implementing provisions of the Trap & Trace Laws make explicit the statute's plain intent to encompass telephone communications only. If the legislature intended trap and trace devices to apply to website software, it would not have continued to mandate a court

order authorizing its use to require the "number" and "physical location of a telephone line." *See id.* § 638.52(d)(3).

*Application of U.S. of Am. For an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 199–200 (C.D. Cal. 1995) is instructive. There, the court interpreted a similar definition of "trap and trace" device, which was then in effect under the federal Pen Register Act. The court held unequivocally that "only devices that are attached to a telephone line" were covered by the statute. *Id.* The court looked to related sections of the Pen Register Act—the analogous Federal law—and found they evidenced clear legislative intent that a telephone line was unequivocally required to qualify as a trap and trace device in the first instance. *Id*. The same reading is compelled here.

Tellingly, while the federal Pen Register Act was later amended in 2001 to apply to a wider range of technology by expressly expanding the definition of a trap and trace device to permit the use of technology on a "telephone line ***or other facility***," to which it could be "attached or applied," ***there has been no corresponding amendment to the Trap & Trace Laws***.[5] The logical conclusion is that unlike its federal counterpart, the California legislature intended a narrower application in its authorization of trap and trace devices in the context of telephone lines. As a result, the TikTok pixel simply has no application here.

///

[5] The Trap & Trace Laws were enacted in 2015—at a time when the internet and website tracking software were both known and omnipresent—thus, there is no need for the Court to evaluate whether they were intended to evolve and apply to future (unimaginable) technologies. *See, e.g., In re Vizio, Inc., Consumer Priv. Litig*., 238 F.Supp. 3d 1204, 1227 (C.D.Cal. 2017) (discussing decisions interpreting California's wiretap laws from the 1960s to potentially apply to modern forms of communications such as the internet and session replay software). The Legislature was aware of the internet and, if it wanted internet software to fall within the purview of Trap & Trace Laws it would have explicitly said so. Similarly, the legislature has regularly amended other sections of the Penal Code and has declined to amend Trap & Trace Laws to bring internet technologies into its purview. *See* Pen. Code §§ 631 (amended 2022, eff. Jan. 1, 2023), 632 (amended 2016), 633 (amended 2018), 633.02 (added 2015), and 633.05 (added 2011).

**2. CIPA's Legislative History Demonstrates that Website Tools are Not Trap and Trace Devices.**

Even if the Court found the Trap & Trace Laws ambiguous, their legislative history also compels a finding that the TikTok software is not a trap and trace device, because as explained above, the statute applies only to telephonic communications. Indeed, the legislative history of sections 638.50-638.53 shows that the statute was intended to authorize state and local law enforcement to use trap and trace devices for telephone surveillance. The California legislature enacted Sections 638.50-638.53 to resolve a conflict with state and federal law. The federal pen register act only authorized state law enforcement to obtain an emergency pen register order if authorized by a state statute, but none existed in California. *See* RJN at Ex. B, p. 10. the Trap & Trace Laws were enacted to remedy this conflict and "explicitly authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations." RJN at Ex. A, p. 6. As one Court recently put it when dismissing a claim brought under the Trap & Trace Laws, "[t]he legislative purpose of the [Trap & Trace Laws] was to authorize law enforcement to seek orders for telephone surveillance. [The law] does not address the privacy rights of Internet users." *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *2 (Cal. Sup. Sep. 09, 2024).

Significantly, the legislative history repeatedly refers to pen registers and trap and trace devices as tools for collecting telephone numbers, not for an operator's collection of data from website visitors. Tellingly, the legislative history expressly and repeatedly contemplates telephone surveillance, and makes no mention of website analytics tools. *See* RJN at Ex. A, p. 1 (explaining that the enactment of CIPA's trap and trace provisions "[a]uthorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in ***telephone surveillance***" (emphasis added)); RJN at Ex. B, p. 10 ("[A]nother tool law

enforcement uses is called a ***'trap and trace device' which allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers***.") (emphasis added).[6] This context supports a narrow interpretation of the statute, limiting it to telephonic communications only.

**3. Other California Legislation Governs the Use of Website Analytics Tools.**

Not only is the application of the Trap & Trace Laws to website analytics tools entirely omitted from the statute, and contradicted by the legislative history, it is also at odds with California Consumer Privacy Act ("CCPA"), a separate statute that directly governs the sharing of "personal information" by businesses, including through online analytics tools. *See* Cal. Civ. Code § 1798.100 *et seq*. The CCPA, initially enacted three years after the enactment of Section 638.51, governs personal information that "identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly with a particular consumer." Cal. Civ. Code § 1798.140(v)(1). It provides a private right of action only for those "consumer[s] whose nonencrypted and nonredacted personal information ... is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information." Cal. Civ. Code § 1798.150(a). If Plaintiff's novel theory were to be accepted, it would impose a conflicting obligation on website operators, insofar as the two laws would impose differing requirements for when the disclosure of information that identifies an individual is actionable.

---

[6] *See also* RJN at Ex. B, p. 10 ("Pen registers and track *[sic]* and trace devices track ***incoming and outgoing telephone calls***.") (emphasis added)); *id.*, p. 11 ("any location information obtained by a pen register or a track *[sic]* and trace device is limited to the information that is contained in the ***telephone number***" (emphasis added); RJN at Ex. A, p. 5 ("As noted above, pen registers/trap and trace devices are used by law enforcement for ***telephone surveillance*** to record incoming and outgoing ***phone numbers from a tapped line***." (emphasis added)).

California courts instruct that when interpreting two statutes that would impose conflicting obligations, "[a] court must, where reasonably possible, harmonize [the] statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions." *Moore v. Superior Court of Riverside Cnty.*, 58 Cal.App.5th 561, 574 (2020). The inconsistencies in applying the Trap & Trace Laws to website analytics tools—which would require a court order for their use—and the CCPA, which contains no such requirement, is easily reconciled. The plain language, supported by its legislative history, demonstrates that the Trap & Trace Laws apply to telephone surveillance only. *See, e.g., Hickory Farms*, 2024 WL 1698147, at *3 (Cal.Sup. Mar. 13, 2024) (granting dismissal of Section 638.51 claim where complaint did not allege use of "a mobile phone or other potential form of communication device potentially qualifying as a cellular device" that would fit within the purview of the statute).

**B. Section 637.2's Private Right of Action Does not Apply to Section 638.51.**

Not only are the Trap and Trace Laws inapplicable to the conduct at issue, but Plaintiff is incorrect that Section 637.2 provides a private right of action to sue for violations of Section 638.51. "The Legislature's intention to create a private cause of action must be expressly stated or strongly implied in the statutory language or legislative history." *Vasquez v. Solo 1 Kustoms, Inc.*, 27 Cal. App. 5th 84, 91 (2018). Even where statutory language appears clear, the court must assess whether the statute contains a latent ambiguity, or "some extrinsic evidence creates a necessity for interpretation for a choice among two or more possible meanings." *Coburn v. Sievert,* 133 Cal. App. 4th 1483, 1495 (2005). "Such a necessity is also present" where, as here, "a literal construction would produce absurd consequences." *Id.*

In 1967, the California Legislature enacted Chapter 1509, which added to the Penal Code, sections 630 through 637.2 (the "California Invasion of Privacy Act" or

"CIPA"). *See* RJN, Ex. C. In 2015 and 2016, forty-eight years after passage of CIPA, the Trap & Trace Laws were added to the Penal Code to provide law enforcement a path to use surveillance devices. RJN, Exs. D, E.[7] The Trap & Trace Laws do not include language supporting incorporation or applicability of Section 637.2 into the Trap & Trace Laws. As such, the plain language does not support Plaintiff's position.[8] Additionally, Plaintiff's proposed interpretation would create a conflict with the remedies expressly provided. Specifically, Section 638.55 provides remedies for violations of the Trap & Trace Laws but does not reference a private right of action for statutory damages. Pen. Code § 638.55. Instead, Section 638.55 confirms that only the Attorney General is permitted to commence a civil action. This evidences an intentional decision to treat the Trap & Trace Laws as separate and apart from the statutory framework for Sections 630 to 637. *Vicko Ins. Services v. Ohio Indem. Co.*, 70 Cal.App.4th 55, 66 (1999) (finding existing remedies "together with the absence of any reference to a private right of action" to be "strong evidence the Legislature did not intend to create such a private right to sue for damages").[9] Moreover, the fact that the Legislature chose to nest the relevant provision outside of Sections 630 to 637, further evidences an intent that the Trap & Trace Laws be construed separately from Sections 630 to 637, such that Section 637.2's civil damages provision should not

[7] In enacting Trap & Trace Laws, the Legislature stated only that they were added "to the Penal Code" and unlike past CIPA enactments, did not include a reference to 637.2, the California Invasion of Privacy Act or any particular legislative Part, Title, or Chapter. *Id.*

[8] Plaintiff's complaint cites *Moody v. C2 Educ. Sys. Inc.*, 2024 WL 3561367, at *4 (C.D. Cal. July 25, 2024) which incorrectly found that "637.2 expressly states that all CIPA violations, including § 638.51, confer a private right of action." It does not. In fact, 637.2 only provides a private right of action for violations of "this chapter." "This chapter" is ambiguous and could be referring to Chapter 1509 which added Sections 630 to 637.2 to the Penal Code or could be referring to only those sections enacted with 637.2. Moreover, in enacting the Trap & Trace Laws, the Legislature did not state that the provisions should be part of the same legislative chapter as Section 637.2. Indeed, the structural choice to nest it outside indicates otherwise. *Moody* did not address these contentions.

[9] *See also Waits v. Pacifica Villa Royale, LLC* (Cal. Ct. App. Aug. 26, 2008) 2008 WL 3906679, at *10 (noting that "[b]ecause the Legislature provided for these specific remedies, and did not include a private damages remedy, we necessarily presume that this remedy is not available").

apply to the Trap & Trace Laws. *See Univ. of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 353 (2013) (finding that a provision added to a particular statutory section, did not apply to a subsequent statutory section because in the same way that a legislature's "choice of words is presumed to be deliberate, so too are its structural choices.").[10] Indeed, on other occasions, the California Legislature nested new provisions within sections 630 to 637. *See, e.g.*, Cal. Pen. Code § 632.5 (enacted in 1985). In fact, when the Legislature enacted Section 632.5, it made express reference to the civil penalties available under Section 632.7. Cal. Pen. Code § 632.5(a). That the Legislature placed the Trap & Trace Laws outside of the existing framework (without any such cross-reference) must be interpreted as an intentional structural decision.

Similarly, the legislative history confirms that the private right of action should not be extended to the Trap & Trace Laws. "[L]egislative history can reveal the Legislature's intent to create a private right of action . . . though it must be 'clear' that was the intent." *Mayron v. Google LLC,* 54 Cal.App.5th 566, 573 (2020). Nothing in the legislative history of the Trap & Trace Laws evidences an intent to invoke Section 637.2's civil liability provision—let alone a clear intent. Where "Legislation expresse[s] no intent on the matter either way, directly or impliedly, there is no private right of action." *Animal League Defense Fund v. Mendes,* 160 Cal.App.4th 136, 142 (2008).

### C. Plaintiff Fails to Allege Facts Supporting Statutory Standing Under Section 637.2.

Even if Section 637.2 did provide a private right of action to sue for violations of Section 638.51 (it does not), the Complaint would still fail because Plaintiff lacks statutory standing to sue under Section 637.2.

[10] Faced with similar questions, courts generally refuse to apply old private rights of action to new provisions enacted thereafter for other purposes. *See, e.g.*, *Glob. Naps, Inc. v. Bell Atl.-New Jersey, Inc.*, 287 F.Supp. 2d 532, 545 (D.N.J. 2003) (refusing to apply private right of action in statute enacted long before substantive statute allegedly violated).

Section 637.2 provides a private right of action only for a person "who has been injured by" a violation of one of its provisions. Cal. Penal Code § 637.2. The Complaint does not even try to assert that Plaintiff was harmed by BB OpCo's use of the TikTok software, and thus, Plaintiff effectively concedes that she suffered no injury. There are no facts that could even possibly imply an injury because Plaintiff's Complaint fails to allege what, if any, of her own information may have been collected by the TikTok software or how it could constitute an invasion of privacy. Plaintiff's abject failure to plead any such facts leaves both BB OpCo and this Court guessing as to the basis of the claim for damages. This is plainly deficient.

As the court made clear in *Limon v. Circle K Stores Inc*., 84 Cal. App. 5th 671 (2022), review denied (Jan. 25, 2023), the purported availability of statutory damages does not negate the requirement to establish an actual injury to recover under a statutory violation, particularly where, as here, an injury requirement is expressly written into the statute. *See* Cal. Penal Code § 637.2. There, the court reiterated that statutory damages, as opposed to statutory penalties, "were intended to compensate a plaintiff for injury" and designed to provide redress where damages are "difficult or impossible to quantify or prove." *Id*. at 703. But a mere statutory violation is not itself sufficient. *Id*. at 706 (no standing where no "concrete or particularized injury to privacy interests").

Here, Plaintiff has omitted any specific information that BB OpCo allegedly collected from Plaintiff herself. But even if Plaintiff had alleged her information was collected, the information she alleges can be collected by the TikTok pixel falls outside of a recognized privacy interest. *See I.C. v. Zynga, Inc.,* 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (no standing based on disclosure of "email address, phone number, or Facebook or Zynga username"). As aptly stated by a district court recently, "[g]iven the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that

space." *Thomas v. Papa Johns Int'l, Inc.,* 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024). As a result, the Court should dismiss the Complaint because Plaintiff has failed to allege facts sufficient to establish an injury as is required to sue under Section 637.2.

**D. Plaintiff Fails to Allege Facts Supporting the Claim that BB OpCo Installed or Used a "Trap and Trace Device" Within the Meaning of CIPA.**

Even if all of these threshold defects did not exist, Plaintiff's claim would still fail because she fails to allege the essential elements of her claim. To state a claim Plaintiff must put forth sufficient facts to demonstrate that BB OpCo installed a trap and trace device in violation of Section 638.51. But Plaintiff's Complaint only pays lip service to Section 638.51's specific requirements that a trap and trace device (1) captures ***incoming electronic or other impulses***, (2) that identify the originating number or ***other dialing, routing, addressing, or signaling information***, (3) that is reasonably likely to ***identify the source*** of a wire or electronic communication, but not the contents of a communication. Cal. Penal Code § 638.51. There are simply no facts alleged in the Complaint that identify any "incoming electronic impulses" captured by the TikTok software whatsoever, nor whether or how the vague information that Plaintiff identifies qualifies as "dialing, routing, addressing, or signaling information"—it plainly does not.

Although Plaintiff lists examples of record data points that the TikTok software could hypothetically collect from a website user (such as device, browser, geographic, and referrer information), Plaintiff fails to allege any fact identifying what information of *hers* BB OpCo collected, so that the Court may assess whether any such information is covered by the Penal Code. *See e.g.,* RJN Ex. F, *Heiting v. F21 OPCO, LLC*, No. 24STCV20340 (Cal. Sup., Nov. 18, 2024 Minute Order) (sustaining demurrer and dismissing complaint alleging trap and trace claims based on the TikTok

pixel where the complaint alleged no specific facts supporting that the plaintiff was actually identified, or how the TikTok pixel functioned to collect "electronic impulses").

Moreover, Plaintiff's reference to device and browser information, referral and url tracking, and geographic information, are so vague that neither BB OpCo nor the Court can discern whether any of these categories falls within the purview of "dialing, routing, addressing, or signaling information" of a communication instrument covered under Section 638.51. On their face, device and browser information, geographic information, and referral tracking are not signaling information as they do not fit within the same category as dialing, routing or addressing. *See People v. Giordano*, 42 Cal. 4th 644, 660, 170 P.3d 623, 633 (2007) ("*Ejusdem generis* applies whether specific words follow general words in a statute or vice versa…[T]he general term or category is restricted to those things that are similar to those which are enumerated specifically."). Location data, another category of information Plaintiff claims the TikTok pixel may collect, is expressly excluded from the statute. *See* Cal. Penal Code § 638.52(c) (location data from telephone numbers are okay). As are "contents of communications". *See* Cal. Penal Code § 638.50(c); *see also Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979) (stating that trap and trace devices do not overhear conversations or confirm whether a call was completed).

Plaintiff's Complaint not only fails to identify the required "dialing, routing, addressing or signaling information," it also does not allege that such information is "reasonably likely to identify the ***source of a wire or electronic communication***…" to fit within the statutory requirements. Cal. Penal Code § 638.50(c) (emphasis added). "Wire communication" and "electronic communication" are defined in Penal Code section 629.51(a). Cal. Penal Code § 638.50(a) (stating that definition contained in section 629.51(a) applies). "Wire communication" is an "aural transfer," meaning a transfer "containing the human voice." Thus, a "wire transfer" is not applicable here

on its face. Cal. Penal Code § 629.51(a)(1), (4). "Electronic communication" is defined to expressly *exclude* "any communication from a tracking device." Cal. Penal Code § 629.51(a)(2)(C). "Tracking device" is defined, in relevant part, as "an electronic or mechanical device that permits the tracking of the movement of a person or object." Cal. Penal Code § 629.51(a)(3). The TikTok software, alleged by Plaintiff to operate as a "tracing process" that purportedly tracks the location and identity of users, falls far outside these statutory definitions.

**E. Plaintiff Fails to Plead BB OpCo Installed the TikTok Pixel in California.**

Under California law, a presumption exists against the extraterritorial application of state law unless the Legislature's intention to have the law apply extraterritorially "is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.,* 51 Cal. 4th 1191, 1207 (2011). Section 638.51 does not "clearly express," nor can it be "reasonably…inferred" from its language that the Legislature intended it to apply beyond California's borders. Therefore, under binding precedent, Section 638.51 should apply only to trap and trace devices installed or used *in California*.

Plaintiff fails to state a claim because Plaintiff does not plead that the alleged trap and trace activity took place in California. Plaintiff alleges that BB OpCo installed the TikTok pixel on the Website and collected information about the Plaintiff's Website visit. (Compl. ¶ 1.) Plaintiff concedes, however, that BB OpCo is a Connecticut limited liability company (*see id.* ¶ 8) and does not plead any facts showing that the TikTok pixel was installed, or that TikTok collected Plaintiff's information, in California. Because Plaintiff fails to allege that the challenged conduct occurred in California, Plaintiff's Complaint should be dismissed. *Sullivan*, 51 Cal. 4th at 1207.

///

### F. BB OpCo Is Exempt As The Website Operator And/Or Because It Was a Party to the Communication.

Even if Plaintiff otherwise states a claim—Plaintiff has not for all the reasons explained herein—BB OpCo is nevertheless exempt.

Section 638.51(b) allows a provider of electronic or wire communication service[11] to use a trap and trace device to "operate…a wire or electronic communication service." Cal. Pen. Code § 638.51 (b). Much like in *Columbia Pictures*, BB OpCo's alleged collection of incoming user information like the device, browser, geographic, and referrer information as alleged by Plaintiff is necessary to operate the website. *See Columbia Pictures Indus. v. Bunnell,* 2007 WL 2080419, at *11 (C.D. Cal 2007) (interpreting analogous federal exemption). Critically, BB OpCo necessarily captures such data when a user accesses their website, which is related to the functioning of the internet and connectivity between a user's browser and the website. *See United States v. Jean,* 207 F.Supp.3d 920 (W.D. Ark. 2016); *Brown v. Google LLC*, 2021 WL 6064009 (N.D. Cal. 2021).

Moreover, and significantly, in addition to exempting a communication provider from using a trap and trace device to operate, maintain, and test a wire or electronic communication service, Section 638.51 also allows a communication provider to use a trap and trace device when the "consent of the user of that service has been obtained." Cal. Pen. Code 638.51(b)(5). It is BB OpCo's—not Plaintiff's—consent required to employ the TikTok software on its own website.[12] *Id.*; *see Rules*

[11]Plaintiff cannot dispute that BB OpCo is a provider of a communication service as contemplated by Section 638.51(b), as multiple courts have recognized. *See Open Text Corporation*, No. 24STCV05440 at 6 (addressing pen register claim against website operator and finding that "***Defendant's website is an electronic communication service***" within the meaning of Section 638.51(b)(1) (emphasis added)); *Transitions Optical* II, No. 23STCV30742 at 5 (considering exemption provisions under Section 638.51(b) in context of trap and trace and pen register claims brought against website operator and concluding that "Defendant's website is an electronic communication service").

[12] The legislature's use of the singular "user" for Section 638.51's consent requirement is a notable and intentional departure from Section 631's prohibition on wiretapping, which requires the consent

*and Policies Regarding Calling No. Identification Serv.-Caller ID* 9 F.C.C. Rcd. 1764 (1994) (addressing caller ID feature as trap and trace device under federal statute and holding that telephone company need only obtain the telephone subscriber's, rather than the third-party caller's, consent to fit within the analogous federal exception); *Wisconsin Professional Police Ass'n v. Public Service Commission*, 205 Wis. 2d 60, 80 (Wis. Ct. App. 1996) (collecting cases finding same). Because BB OpCo provided its consent to the installation of the TikTok software, it is covered under the separate statutory consent exception. *See, e.g., Hickory Farms*, 2024 WL 1698147, at *4 (granting dismissal of Section 638.51 on the basis of consent).[13]

## VII. CONCLUSION

For the foregoing reasons, BB OpCo respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

///

///

///

---

of "all parties." *See* Cal. Penal Code § 631(a) (forbidding wiretapping "without the consent of all parties to the communication"). Indeed, if 638.51 required the consent of all parties, then "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C.Cir. 2002) (interpreting federal law identical to Section 638.51). After all, caller ID allows the recipient of a call to learn the identity of the caller. *See id*. Accordingly, if Section 638.51 is interpreted to require all-party consent, then caller ID is a crime. *See id*. Section 638.51 avoids that absurd result by requiring only the consent of one party (the "user," singular). *See S. Bell Tel. & Tel. Co. v. Hamm,* 306 S.C. 70, 73 (1991) (interpreting materially identical law); *In re DoubleClick Inc. Privacy Litigation* 154 F.Supp.2d 497 (S.D.N.Y. 2001) ("user" of web service was website operator; not website visitor).

[13]If the exceptions did not apply, and liability could extend to a website provider in these circumstances, it would lead to absurd results. A website operator would be forced to obtain a court order to use technology to operate its website. Nothing in the statute suggests that the legislature intended to criminalize website analytics tools used in the ordinary course. *See Levings v. Open Text Corporation*, No. 24STCV05440 at 4 (sustaining demurrer on analogous Section 638.51 claim and explaining that the statute "did not criminalize the process by which all websites communicate with all users who choose to access them."); *see also Saracco Tank and Welding Co. v. Platz*, 65 Cal.App.2d 306, 315 (1944) (instructing that penal statutes should be interpreted narrowly).

DATED: January 10, 2025 BLANK ROME LLP

By:/s/ Ana Tagvoryan
Ana Tagvoryan
Victor Sandoval
Attorneys for Defendant
BB OpCo LLC

The undersigned, counsel of record for BB OpCo, certifies that this brief contains 6,881 words, which complies with the word limit of L.R. 11-6.1.

By:/s/ Ana Tagvoryan
Ana Tagvoryan