Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Kieren Kishnani*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KIEREN KISHNANI, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

BB OPCO, LLC d/b/a Brooks Brothers, a Connecticut limited liability company; and DOES 1 through 25, inclusive,

Defendants.

Case No.: 2:24-cv-09629-ODW-JC

**PLAINTIFF KIEREN KISHNANI'S OPPOSITION TO DEFENDANT BB OPCO, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing
Date: March 17, 2025
Time: 9:30 am
Courtroom: 9C

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. RELEVANT FACTUAL BACKGROUND ........ 4

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 7

A. The California Invasion of Privacy Act's Prohibition on Trap and Trace Devices Applies To The Internet ........ 7

1. Plaintiff Properly Pleads Defendant Used a Trap and Trace Device Under the Plain Meaning of the Statute ........ 8

2. Defendant's Extraterritoriality Arguments Lack Merit ........ 13

3. Defendant's Remaining Arguments Lack Legal Support ........ 15

B. CIPA Provides Plaintiff a Private Right of Action ........ 18

C. Defendant Is Not Exempt and Cannot Consent to Its Own Invasion of Plaintiff's Privacy ........ 20

D. Plaintiff Has Both Article III and Statutory Standing ........ 22

V. CONCLUSION ........ 26

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ........ 28

CERTIFICATE OF SERVICE ........ 29

# TABLE OF AUTHORITIES

Cases

*Anne Heiting v. Taylor Fresh Foods, Inc.*, LASC Case No. 24STCV12891 at 4 (July 31, 2024) .......... 9
*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) .......... 15
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .......... 5
*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) .......... 5
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .......... 5
*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). .......... 5
*Conley v. Gibson*, 355 U.S. 41, 47 (1957) .......... 5
*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) .......... 5
*Greenley*, 684 F. Supp. 3d at 1050 .......... 8, 11
*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*")) .......... 20
*Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020) .......... 9
*Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 at 3 (September 17, 2024) .......... 10
*Lesh v. CNN, Inc.*, No. 24 CIV. 03132 (VM), 2025 WL 563358, at *4-*5 (S.D.N.Y. Feb. 20, 2025) .......... 9, 19, 23
*Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627, 637 (2018) .......... 14
*Lungren v. Deukmejian*, 45 Cal. 3d 727, 735 (1988) .......... 9
*Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 8
*Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 .......... passim
*Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) .......... 20
*Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024) .......... 10
*Rodriguez v. Autotrader.com*, Inc., 2:24-cv-08735-RGK-JC, ECF No. 25 (C.D. Cal. January 8, 2024) .......... 1, 2, 19
*Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .......... 1, 8, 16, 22
*TikTok Inc. v. Garland*, 122 F.4th 930, 939 (D.C. Cir. 2024) .......... 22

Statutes

2015 Cal. Legis. Serv. Ch. 204 (A.B. 929) .......... 9
Cal. Civ. Code § 1798.175. .......... 14
Penal Code § 629.51(a) .......... 2, 6, 9
Penal Code § 637.2(a) .......... 16, 17
Penal Code § 638.50 .......... passim
Penal Code § 638.51 .......... passim
Penal Code §638.52(c) .......... 11

Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. No. 118-50, div. H (2024)........................................................................................22
Pub.L. 107-56, Title II, §§ 216(c)(1) to (4), Oct. 26, 2001, 115 Stat. 290.......................15

Other Authorities

Rule 9 ........................................................................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant collects data on unsuspecting visitors to its website using sophisticated technology so that it can identify and track Californians with the assistance of TikTok. Defendant, like other defendants before it, seek the Court's assistance to bail them out of their privacy collection practices that are illegal in this state. *E.g.*, *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367, at *4 (C.D. Cal. July 25, 2024) (concluding that defendant could be held liable for violating California's prohibition on trap and trace devices over the internet) ("*C2*"); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024) (same); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same). However, virtually every court who has assessed the TikTok Software at the pleading stage has come to the same conclusion – that the TikTok Software fits within the definition of an illegal "Trap and Trace" device under California Penal Code Section 638.51 because of the way it is designed to collect information from Californians without their consent. As Judge Klausner explained in *C2*, "Defendant argues that § 638.52 indicates that a pen register or trap and trace device must be a physical device attached to a telephone line. . . . The Court disagrees." 2024 WL 3561367, at *2; *see also Rodriguez v. Autotrader.com*, Inc., 2:24-cv-08735-RGK-JC, ECF No. 25 (C.D. Cal. January 8, 2024) (same).

Defendant relies on a series of specious and increasingly fanciful legal theories to avoid liability but tellingly never even cites to the applicable statutory definition of "electronic communication" when it argues that the term does not extend to the internet. *See* Penal Code §§ 638.50(a), (c) (defining trap and trace devices and incorporating the definition for an "electronic communication" found in Penal Code Section 629.51(a)(2)); *Mirmalek*, 2024 WL 5102709, at *3 (noting the "expansive" definition used by the California Legislature).

Defendant instead chooses to make multiple incorrect factual representations about Plaintiff's allegations or engage in wild and unsupported speculation about the technology involved. Defendant for example goes on unrelated tangents about what a ruling for Plaintiff would mean for caller ID systems. Mot. at 31 n.12. But nothing in Plaintiff's FAC involves caller ID and courts have concluded that caller ID systems are not analogous to Trap and Trace devices on websites. *Rodriguez*, No. 2:24-CV-08735-RGK-JC, 2025 WL 65409, at *6 ("Unlike a caller ID system, which is installed on the call recipient's device, the Website installs the tracking software on the visitor's browser. The software then remains on the visitor's browser unless the visitor decides to delete it.").

Defendant similarly makes multiple arguments based on the failure of the FAC to allege that Plaintiff had a TikTok account, Mot. at 16 n.3, 25, but part of the reason why Defendant's conduct that enabled TikTok is so problematic is because TikTok was attempting to fingerprint and de-anonymize *everyone it could regardless of whether they ever had a TikTok account*. Defendant writes that "[i]f Plaintiff does not have a TikTok

account, Plaintiff's identity cannot be connected to Plaintiff's browsing activity" but there is simply no basis for Defendant's factual assertion in its Motion. *Id.* at 16 n.3. The whole point of TikTok's scheme is to gather as much data as it can about as many people as possible in order to connect as many dots between various data points as it can in order create a fingerprint that can identify someone from their anonymous activity. FAC ¶¶ 10, 15, 18, 29-31. And while that may be easier if a person has a TikTok account, an account is not necessary and Defendant cannot simply make up facts in its Motion that are not in the FAC and in fact contradict the theory alleged in the FAC.

Defendant ultimately argues that the federal courts cannot hold Defendant accountable for its conduct because the injuries it caused by invading Plaintiff's privacy with an illegal trap and trace device are simply not cognizable under Article III. Similarly, the State of California cannot hold it accountable for violating California law because Defendant was in another state when it used the internet to violate invade the privacy of Plaintiff and potentially millions of other people in California. Fortunately, Defendant is not above the law. Privacy-based injuries like those alleged in the FAC have long been cognizable under Article III, and there are no extraterritoriality concerns with holding Defendant accountable under California law for communicating with and violating the privacy of people within California.

## II. RELEVANT FACTUAL BACKGROUND

Defendant is "the proprietor of www.brooksbrothers.com, an online platform that sells clothing for men, women, and children. ("Website"). FAC ¶¶ 5, 8. On that website

Defendant installed code written and controlled by TikTok, a California company, that violates California law and invades the privacy of every person that visits its website, including Plaintiff, without their consent. *Id.* ¶¶ 8-25. This was because the code acted as an illegal "Trap and Trace" device, in violation of California Penal Code Section 638.51 (California's "Trap and Trace Law), part of the California Invasion of Privacy Act, § 630 *et seq*. Defendant's purpose in violating the privacy rights of Plaintiff and countless others was because data is valuable, and data about specific individuals is more valuable than anonymous or aggregated data. *E.g.*, FAC ¶¶ 10-12, 20-21. By operating an illegal trap and trace device Defendant could turn anonymous data in personalized data about specific individuals through de-anonymizing the data or "fingerprinting." *Id.* ¶ 10. Fingerprinting can only happen because companies like TikTok have collected vast troves of personal data which it then uses build up enough of a profile on an individual so it can identify the source and origin of otherwise anonymous website visits and interactions. And in exchange for contributing to TikTok's massive database by installing its code Defendant gets to enjoy the benefits that come when an online retailer has removed visitors' privacy thereby turning the anonymous website visitor into the specifically identifiable recipient of highly personalized and universally unwanted marketing efforts. *E.g.*, FAC ¶¶ 10, 15, 18, 29-31. If people like Plaintiff actually wanted Defendant's marketing and advertising to be more aggressive, personalized, and tailored, companies like Defendant have a lot of options and make it very easy to do just that, from email-signups to expressly asking customers for their preferences or countless other options. Companies like Defendant choose to use an

illegal Trap and Trace device because clearly many people do not want to give up their anonymity and privacy to every company whose website they visit, that is why the TikTok Software was designed to meet this sole objective. FAC ¶ 15.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## IV. ARGUMENT

### A. The California Invasion of Privacy Act's Prohibition on Trap and Trace Devices Applies To The Internet

It is very clear from the relevant terms and their statutory definitions that CIPA's prohibition on trap and trace devices in Section 638.51 applies to internet communications because internet communications obviously involve the transfer of data "by a wire, radio, electromagnetic, photoelectric, or photo-optical system." Penal Code § 638.50(a) (incorporating the meaning of "electronic communication" set forth in § 629.51(a)(2)). The analysis is straightforward, the relevant terms are clearly defined and lack any ambiguity, and the statutory language speaks directly to the issue and indisputably shows that Section 638.51 applies to all electronic communications and is not limited to telephone communications. Virtually every judge who has addressed the issue has found it to be clear and straightforward, but Defendant seeks to make the issue appear complicated and confusing because it does not like that result. This is also not a question of whether an older statute applies to a new form of technology because Section 638.51 was passed in 2015 by legislators who were obviously very aware of internet communications and clearly understood that the definition chose for "electronic communication" included the internet. The analysis below will go through CIPA's statutory provisions to prove the California Legislature clearly chose to cover internet communications under CIPA and then explain why Defendant's scattershot arguments to the contrary are simply wrong, ignore dispositive provisions, or can otherwise be rejected out of hand.

**1. Plaintiff Properly Pleads Defendant Used a Trap and Trace Device Under the Plain Meaning of the Statute**

Plaintiff asserts that Defendant violated California's Trap and Trace Law. California Penal Code Section 638.51 provides, in pertinent part, as follows:

> (a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.
> (b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:
> (1) To operate, maintain, and test a wire or electronic communication service.
> * * *
> (5) If the consent of the user of that service has been obtained.

Thus, to state a claim under § 638.51, a plaintiff must allege, at most, that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. *Id*. § 638.51. California law defines a "trap and trace device" as:

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

Cal. Penal Code § 638.50(c). And in the same section just a few lines earlier § 638.50(a) instructs that the terms "'Wire communication' and 'electronic communication' have the meanings set forth in subdivision (a) of Section 629.51." § 638.50(a). The definition for "electronic communication" in § 629.51(a)(2) states that, subject to certain exceptions not relevant here, the term "Electronic communication" means "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire,

radio, electromagnetic, photoelectric, or photo-optical system." By incorporating this definition for electronic communication into the definition of a trap and trace device in § 638.50(c) CIPA clearly encompasses internet communications because they involve the transfer of data by "a wire, radio, electromagnetic, photoelectric, or photo-optical system." There is simply no way to read the expansive language of the statutory definition of trap and trace devices and conclude that the California Legislature actually meant to cover telephone communications and nothing else.

Defendant's arguments simply have no basis in any of CIPA's statutory definitions discussed above and courts have repeatedly and universally rejected it. If the Legislature had intended to limit trap and trace devices to telephone communications then that is what CIPA would have said. But it doesn't. Judge Breyer in the Northern District recently explained:

> As the *Shah* and *Greenley* courts held, "the Court cannot ignore the expansive language in the California Legislature's chosen definition of pen register," which is "specific as to the type of data collected," but "vague and inclusive as to the form of the collection tool" (i.e. "device or process").

*Mirmalek*, 2024 WL 5102709, at *3 (quoting *Greenley*, 684 F. Supp. 3d at 1050 and *Shah*, 2024 WL 4539577, at *1) (cleaned up). The expansive language chosen by the legislature requires the Court to reject Defendant's attempt to ignore its plain and unambiguous terms. And while *Shah* and *Greenley* concerned pen registers, Section 638.50(a) of CIPA requires the statutory definitions of "pen register" in § 638.50(b) and "trap and trace device" in § 638.50(c) to both use the exact same definition of "electronic communication" found in §

629.51(a)(2) making the analyses identical. This exact same argument was also rejected in *C2* because "Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to 'wire or electronic communication.'" *C2*, 2024 WL 3561367, at *2 (citing Cal. Penal Code §§ 638.50(b)–(c)); *see also Lesh v. CNN, Inc.*, No. 24 CIV. 03132 (VM), 2025 WL 563358, at *4-*5 (S.D.N.Y. Feb. 20, 2025) (same).

Defendant's attempts to invoke selective parts of the legislative history are similarly unhelpful to its attempts to evade the statute's plain meaning under California's rules for statutory interpretation. "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute)." *Lungren v. Deukmejian*, 45 Cal. 3d 727, 735 (1988) (citations omitted); *see also Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020) ("If the language is clear, courts must generally follow its plain meaning . . ."). If the California Legislature had wanted to limit trap and trace devices to just telephones then the very first line of Assembly Bill 929 adding § 638.50(a) to the Penal Code would have said that "electronic communication means telephone communications" instead of expressly adopting the expansive definition of "electronic communication" set forth in Section 629.51(a). 2015 Cal. Legis. Serv. Ch. 204 (A.B. 929).

Moreover, in addition to the federal decisions discussed above which reached this conclusion, numerous state court judges have also reached the same conclusion. *E.g.*, *Anne Heiting v. Taylor Fresh Foods, Inc.*, LASC Case No. 24STCV12891 at 4 (July 31, 2024)

("neither CIPA nor the modern version of the federal statutes cited in *Digital Analyzer* limit the definition of 'pen register' or 'trap and trace device' to physical devices attached to telephone lines."); *Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 at 3 (September 17, 2024) ("The plain language of section 638.51 does not limit the statute to telephone-based communications."); *Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024); *Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024).

Defendant also faults Plaintiff for not doing more to identify the specific "incoming electronic impulses" of hers that were captured and allege which specific pieces of her personal information were identified. But Plaintiff has alleged more than enough to identify the categories and types of information the TikTok Software collected about *everyone, including Plaintiff*, which includes "device and browser information, geographic information, referral tracking, and url tracking." FAC ¶ 11. This type of information also plainly falls under the definition of electronic communications despite Defendant's absurd argument that any geographically identifying information makes the TikTok Software a "tracking device" despite the fact that identifying someone's location does not involve tracking a single inch of movement. It is also clear that collecting information including an individual's geographic location, IP address, zip code, cell phone type and model, browser information, and recently visited websites is the sort of information that is reasonably likely to identify an individual. Defendant apparently demands specific identification of the

individual 1's and 0's involved but that would be a near-impossibility at this stage and goes far beyond what is required to give it fair notice of the allegations against it.

Defendant also incorrectly asserts that location data "is expressly excluded from the statute" under Section 638.52(c) and that "location data from telephone numbers are okay" - in clear violation of the Trap and Trace Law. Mot. at 28. Section 638.52(c) provides that information from a trap and trace device *that was legally obtained pursuant to a court order* "shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number." This does not make it acceptable for Defendant anyone else using *an illegal trap and trace device* to obtain location data based on a telephone number, nor does it immunize Defendant from obtaining location data on Plaintiff via any other information besides telephone numbers.

In short, Penal Code § 638.51 unambiguously applies to internet communications and the FAC alleges the two elements necessary to establish a violation of Penal Code Section 638.51: (i) Defendant installed a prohibited device (pen register or trap and trace); (ii) without a court order. *E.g.*, *Greenley*, 684 F. Supp. 3d at 1050-51. Plaintiff has therefore properly stated a claim under Section 638.51.

**2. <u>Defendant's Extraterritoriality Arguments Lack Merit</u>**

Defendant argues that Plaintiff must plead where the TikTok pixel was installed in California or that TikTok collected Plaintiff's information in California because CIPA does not apply extraterritorially. First, there is no general requirement in the federal pleading

rules to allege the specific location of any acts, nor does Rule 8 require a complaint to allege facts affirmatively disproving any potential extraterritorial application of a state's law in order to state a claim. Federal Rule of Civil Procedure 9(b) requires specifics including the who, what, and where, but such geographic allegations are simply not required for complaints for ordinary complaints. Indeed, in the era before the Federal Rules of Civil Procedure allegations of time and place were considered immaterial and it is only because of Rule 9(h) that any allegations that are made regarding time and place may be considered material in the first place.

Defendant also asserts as a matter of law that "the alleged offending conduct occurred where BB OpCo's website is located—not where TikTok happens to maintain an office" or where Plaintiff was located. Mot. at 29. There is no factual or legal basis for this assertion, and it is quite clear that Defendant's conduct in operating a website that sent instructions to Plaintiff's browser in California that violated her privacy means that Plaintiff's rights were violated in California by conduct that occurred in California. Phrased another way, if Plaintiff was in California at all relevant times and Defendant violated her privacy with an illegal trap and trace device then Defendant must have been sending information to Plaintiff in California. The fact that Defendant did so using software from a California company that also collected the data itself even further cements California as the nexus of Defendant's wrongful conduct and the wrongdoing alleged in the FAC. Plaintiff would be more than happy to include much more detailed factual allegations regarding things like the location of Defendant's servers, the locations of Defendant's

personnel involved in the decision to contract with TikTok for this software and install it on its website, and where Plaintiff's data was sent once it left her computer, but Plaintiff will have to uncover this information in discovery and is certainly not required to try to satisfy Defendant's moving targets of pleading rules.

### 3. Defendant's Remaining Arguments Lack Legal Support

Defendant next argues that CIPA does not apply to the internet because of the subsequent enactment in 2018 of the California Consumer Privacy Act ("CCPA"). Mot. at. 21-22. Obviously CCPA itself has no bearing on the plain meaning of CIPA because it was passed three years later by a different Legislature and the CCPA does not amend or even reference CIPA in any way, and the most Defendant can assert is that the CCPA is "at odds" with CIPA and "the two laws would impose differing requirements for when the disclosure of information that identifies an individual is actionable." *Id.* This is on its face incorrect and legally meaningless. There is no legal doctrine involved when two laws are simply "at odds," and it is quite common that different laws have different requirements for bringing suit based on different legal violations, just as the same wrongful act may be alleged to be both negligent and fraudulent. Defendant does not even identify a conflict, at best Defendant has merely argued that one law is harder for an individual to enforce in court than the other. By arguing that a subsequently enacted statute requires a prior statute to be interpreted more narrowly despite the absence of any such language, Defendant appears to be arguing that a portion of CIPA was repealed by implication with the passing of the CCPA. But repeals by implication are disfavored when interpreting California

statutes. *Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627, 637 (2018) ("We do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied.") (citation omitted). In order to invoke the doctrine of implied repeal there must be no rational basis for harmonizing the two statutes, and the statutes must "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." *Id.* (cleaned up). None of that applies here. And far from being repugnant and irreconcilable courts have found that "CCPA and CIPA are complementary." *Mirmalek*, 2024 WL 5102709, at *5.

Moreover, Defendant's argument is expressly foreclosed by the plain text of the CCPA. Defendant plainly ignores the provision of the CCPA stating that "law relating to consumers' personal information should be construed to harmonize with the provisions of this title." Cal. Civ. Code § 1798.175. The CCPA also explicitly states that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id.* So, even if the CCPA and CIPA were not complementary and instead they completely and irreconcilably conflicted such that the terms of the CCPA controlled, then Section 1798.175 of CCPA itself would require that CIPA be applied in this case because it would afford greater privacy protections. *Mirmalek*, 2024 WL 5102709, at *5.

Defendant also makes an argument based on the federal trap and trace law that is equally incorrect. Mot. at 19-20 (citing to *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal.

1995)). As explained in *C2*, that case and Defendant's argument involve a federal law which is at best persuasive and the few lines from the opinion quoted by Defendant do little to even establish how that federal law has any bearing on CIPA. *C2*, 2024 WL 3561367, at *2. Moreover, the language from *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer* that Defendant relies on is from the federal statute referencing the physical attachment of pen registers, not trap and trace devices, and was repealed by the Patriot Act over two decades ago. Pub.L. 107-56, Title II, §§ 216(c)(1) to (4), Oct. 26, 2001, 115 Stat. 290 (amending 18 U.S.C. § 3127). Indeed, Defendant even acknowledges that the scope of the federal law was expanded (thereby invalidating its own arguments based on the prior law) but Defendant fails to acknowledge that California's version is easily broad enough to cover its conduct here. More fundamentally, Defendant repeatedly tries to treat the Trap and Trace Law as merely giving law enforcement a new tool it previously lacked but ignores the very structure of the law which first creates a general prohibition on trap and trace devices and then creates narrow exceptions for law enforcement acting pursuant to court orders. If all the Legislature had wanted to do was give law enforcement an additional tool then there was no need to pass a law stating that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53," the Legislature would have just included the provisions authorizing court orders. And it is indelibly clear that this prohibition was intended to apply to *all public and private entities* because there is an express exception to it for providers of electronic or wire communication services in

specifically enumerated circumstances. If the Trap and Trace Law were solely to give law enforcement another tool then that entire section should not exist. Moreover, the fact that Defendant cannot obtain a court order for is not an accident but in fact the purpose of the law because Defendant should not be operating Trap and Trace devices.

**B. CIPA Provides Plaintiff a Private Right of Action**

Defendant next argues that CIPA's private right of action in Section 637.2 does not encompass violations of the Trap and Trace Law. But courts have universally concluded that "Section 637.2 confers a private right of action on '[a]ny person who has been injured by a violation of this chapter.'" *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *5 (N.D. Cal. Oct. 21, 2024) (quoting Cal. Pen. Code § 637.2(a)); *see also Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077–78 (C.D. Cal. 2024) ("California Penal Code § 637.2 states that an individual injured by a violation of CIPA may bring a private action to enforce it. Cal. Penal Code § 637.2. The Trap and Trace Law is a part of CIPA. Cal. Penal Code § 638.51."). Defendant raises a series of unrelated points about statutory interpretation to try to avoid the simple language of Section 637.2(a), including language authorizing the Attorney General to "commence a civil action to compel any government entity to comply with the provisions of this chapter" and the fact that Section 638.51 does not fall between Sections 630 and 637. Mot. at 23-25. Defendant repeatedly references the legislative history but at no point actually cites to or discusses anything in the purported legislative history indicating an intention to exclude Section 638.51 from CIPA's clear private right of action. Defendant's only explanation for how the clear

language of Section 637.2(a) authorizing "Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation" actually does not apply to the Trap and Trace Law is offered in a footnote where Defendant argues that the Legislature didn't understand what a "chapter" of the Penal Code meant in the law they enacted. Mot. at 23 n.8. Defendant's argument is that the Legislature that enacted the Trap and Trace Law did not understand the word "chapter" in 637.2 to mean chapter 1.5 of the Penal Code which contains CIPA, and instead the Legislature in 2015 might have thought that the word chapter in 637.2 meant the chapter of the specific session law that originally enacted CIPA in 1967. Defendant cites to no California case ever applying their preferred interpretation of the word chapter, and it is a ridiculous argument. The fact that CIPA contains the word "chapter" eighteen different times and every single one of them is referring to a chapter of the compiled statutory code and not to the chapter of the book recording the legislative session clearly demonstrates that Defendant's argument is erroneous. In 2015 the Legislature demonstrated that they intended to have the Trap and Trace Law privately enforceable through Section 637.2 because they chose to place the Trap and Trace Law in that very same place which they also described using the exact same word – chapter. If chapter actually meant two different things then it's an awfully big coincidence that two different Legislatures both enacted laws that used the word "chapter" and both decided to place those laws into the same "chapter" of the Penal Code and both laws ended up right next to each other within Chapter 1.5 of Title 15 of Part 1 of the California Penal Code. Defendant's argument therefore has no legal basis.

**C. <u>Defendant Is Not Exempt And Cannot Consent to Its Own Invasions of Plaintiff's Privacy</u>**

Defendant next argues that it is entitled to take advantage of the exception to liability for a "provider of electronic or wire communication service" who uses a trap and trace device "[i]f the consent of the user of that service has been obtained." Section 638.51(b)(5). Defendant therefore argues that it is both the provider of the electronic communication service and the user of that service. This is wrong for a myriad of reasons. First, there is nothing in the FAC alleging that Defendant was the provider of an electronic communication service. And contrary to Defendant's assertion Plaintiff in fact strongly disputes that Defendant is a provider of an electronic communication service within the meaning of the Trap and Trace Law, and Defendant provides no statutory basis for the assertion that every website operator is the provider of an electronic communication service. Mot. at 30 n.11. Second, Defendant cannot be both the provider and the user of the service because those are clearly meant to be two different entities and there are no allegations in the FAC sufficient to conclude that Defendant is either or both as a matter of law for the purposes of applying this exception. Indeed, as a matter of federal pleading rules Plaintiff is the party that is allowed to plead in the alternative, not Defendant, and construing the allegations in the FAC in Plaintiff's favor means that if there is any basis to conclude that Defendant is either of those entities also means it cannot be both. Third, it would be irrational and absurd to allow an entity to consent to its own violation of the rights of a third-party. "Given the location and degree of control that the visitor has over

the software, it only seems natural that the visitor, not Defendant, would be software's user in these circumstances. And according to the plain allegations of the FAC, Plaintiff did not consent to the software's installation and use." *Rodriguez*, No. 2:24-CV-08735-RGK-JC, 2025 WL 65409, at *6 (C.D. Cal. Jan. 8, 2025); *see also Lesh*, No. 24 CIV. 03132 (VM), 2025 WL 563358, at *5 ("CNN cannot apply this exception. Lesh is also a user of CNN's Website and did not consent to the Trackers collecting her information. It would be illogical to allow CNN's consent to the installation of Trackers to bar claims from users like Lesh who did not give their consent. Doing so would absolve many actors from liability under CIPA based on their self-serving consent to the use of pen registers they installed or caused to be installed."); *Mirmalek*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *5 ("Section 638.51(b) does not apply because Defendant fails to establish that it is a provider of electronic or wire communication service.") (quotation omitted). What would be the point of an exception for when the user consents if it could be satisfied by a person deciding their own behavior was fine and without the consent of the user whose privacy was being violated?

### D. <u>Plaintiff Has Both Article III And Statutory Standing</u>

Plaintiff suffered a constitutionally cognizable injury when Defendant violated her right to privacy. After reviewing allegations substantially similar to those in the FAC, *C2* explained:

> there is no credible dispute that Plaintiff has alleged an injury necessary for both § 637.2 and standing. Plaintiff alleges: (1) Defendant operates its TikTok Software on its Website; (2) the

> TikTok Software collects data from every visitor of the Website; and (3) Plaintiff visited the Website after the TikTok Software was installed. These allegations demonstrate that Defendant, through the use of the TikTok Software, collected Plaintiff's information, thereby constituting an invasion of privacy. And invasions of privacy are actionable injuries.

2024 WL 3561367, at *2-*6 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*")).

Indeed, violations of someone's right to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). "A right to privacy 'encompass[es] the individuals' control of information concerning his or her person.'" *In re Facebook*, 956 F.3d at 598-99. There, Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." *Id.* at 599. The Ninth Circuit concluded that such an "unauthorized exploration" of someone's private life and information behind their back constitutes a cognizable Article III injury. *Id.* at 599.

The allegations of the FAC more than adequately describe the relevant facts and how Defendant violated Plaintiff's privacy in a constitutionally cognizable way. The Motion spends considerable space faulting Plaintiff for not alleging things that are plainly alleged in the FAC, Defendant simply chose to ignore them or decided they were not good enough. Defendant criticizes Plaintiff for "generic" and "hypothetical" allegations but the FAC alleges is that "the TikTok Software gathers data including device and browser

information, geographic information, referral and url tracking." FAC ¶ 11. And this begins from the very first moment that Plaintiff or anyone else arrives on the Website and continues whenever someone clicks on a new page on the Website. *Id.* ¶¶ 10-12, 15. The FAC also alleges Defendant went far beyond merely collecting basic technical information. Defendant used the information collected to fingerprint the data and deanonymize Plaintiff by matching it "with existing data TikTok has acquired and accumulated about hundreds of millions of Americans," including Plaintiff, presumably because Defendant found more profit in invading Plaintiff's privacy than playing by the rules. *Id.* ¶ 10, 20, 30. Moreover, people like Plaintiff had no idea any of their data was potentially being sent to a foreign government. *Id.* ¶ 14. These allegations all involve Defendant's wrongdoing and the specific injury that Plaintiff personally experienced.

Defendant faults Plaintiff for not alleging the more about the information "disclosed," but to be clear none of the information collected through the TikTok Software was willingly, knowingly, or voluntarily "disclosed" by Plaintiff. This information was collected so Defendant and TikTok could help themselves make more money at the expense of Plaintiff's privacy none of the information collected was in any way necessary because Defendant's website would still run perfectly fine even if it had never sent any of Plaintiff's personal information to TikTok. Indeed, this exact same concern was raised during oral arguments in the Supreme Court. "Just on the data collection, that seems like a huge concern for the future of the country," said Justice Brett Kavanaugh. He suggested that TikTok's vast trove of information on Americans could be used "to develop spies, to

turn people, to blackmail people, people who a generation from now will be working in the FBI or the CIA or in the State Department." Transcript of Oral Argument, *TikTok, Inc. v. Garland* (24-656). Oyez. Retrieved at https://www.oyez.org/cases/2024/24-656. It is difficult to see how the injury Defendant caused is too intangible for Article III when Supreme Court Justices discuss it during oral arguments. Congress itself recognized that millions of Americans have been injured by the depth and volume of data being collected about them that a foreign government could possibly have access to that the United States Congress actually passed a law addressing that concern. *See* Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. No. 118-50, div. H (2024), codified as 15 U.S.C. § 9901; *see generally TikTok Inc. v. Garland*, 122 F.4th 930, 939 (D.C. Cir. 2024) (subsequent history omitted). Plaintiff has alleged specific types of information that Defendant's illegal Trap and Trace device collected on her and countless others and explained how that information becomes valuable because TikTok uses the anonymous data from Defendant's website and countless others sources to be able to digitally fingerprint, personally identify, and track Plaintiff across the digital and physical world.

It is also clear that these allegations are similarly sufficient to constitute an injury for purpose of statutory standing under Section 637.2. *See Shah*, 2024 WL 4539577, at *5 (concluding plaintiffs had sufficiently alleged statutory standing because "Plaintiffs have plausibly alleged that they were injured by being tracked across multiple visits for marketing and advertising purposes, and that they did not expect or agree to such

tracking."); *see also Mirmalek*, 2024 WL 5102709, at *4 (same); *Lesh*, No. 24 CIV. 03132 (VM), 2025 WL 563358, at *3 ("Lesh alleges that CNN installed Trackers, owned by third-party entities, which then received her IP address for purposes of advertisement placement. These facts plausibly suggest that Lesh did not expect the disclosure of this information to third parties, placing the conduct alleged within the scope of CIPA. . . . taking the allegations in the Amended Complaint as true, Lesh has statutory standing to sue under CIPA.").

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the Complaint deficient.

DATED: February 24, 2025 **TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Kieren Kishnani

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Kieren Kishnani, certifies that this brief contains 6,278 words, which complies with the word limit of L.R. 11-6.1.

DATED: February 25, 2025 **TAULER SMITH LLP**

By: */s/ Narain Kumar*
Narain Kumar, Esq.
Attorneys for Plaintiff
Kieren Kishnani

**CERTIFICATE OF SERVICE**

I hereby certified that I served the foregoing document on all parties of record by CM/ECF.

DATED: February 25, 2025 **TAULER SMITH LLP**

By: */s/ Narain Kumar*
Narain Kumar, Esq.
Attorneys for Plaintiff
Kieren Kishnani