BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ana.tagvoryan@blankrome.com
Victor Sandoval (SBN 344461)
Victor.sandoval@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434

*Attorneys for Defendant*
BB OpCo, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KIEREN KISHNANI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BB OPCO, LLC
d/b/a Brooks Brothers, a Connecticut limited liability company, and DOES 1 though 25, inclusive,

Defendants.

Case No. 2:24−cv−09629-ODW-JC

**DEFENDANT BB OPCO LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Judge: Otis D. Wright II
Date: March 17, 2025
Time: 1:30 p.m.
Place: Courtroom 9C, 350 W. 1st Street, Los Angeles, California 90012

Complaint Filed: November 7, 2024
Complaint Served: November 12, 2024
Amended Complaint Filed: January 16, 2025
Trial Date: None set

# TABLE OF CONTENTS

**I.** INTRODUCTION ........ 6

**II.** PLAINTIFF LACKS ARTCILE III AND STATUTORY STANDING TO PURSUE HER CLAIMS. ........ 7

**III.** PLAINTIFF FAILS TO PLEAD A TRAP AND TRACE DEVICE. ........ 8

**IV.** PLAINTIFF FAILS TO PLEAD A QUALIFYING TELEPHONE LINE ........ 11

**A.** To The Extent the Statute Is Ambiguous, Legislative History Supports Defendant's Position. ........ 12

**V.** PLAINTIFF FAILS TO PLEAD BB OPCO INSTALLED THE TIKTOK PIXEL IN CALIFORNIA ........ 13

**VI.** THERE IS NO PRIVATE RIGHT OF ACTION. ........ 14

**VII.** IN THE ALTERNATIVE, BB OPCO 21 IS AN ELECTRONIC COMMUNICATION SERVICES PROVIDER. ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Casillas v. Transitions Optical, Inc. I*
(Super. Ct. L.A. Cty., April 23, 2024 Minute Order, No. 23STCV30742) ........ 9

*Casillas v. Traveler's Choice*
(Super. Ct. L.A. Cty., May 29, 2024 Minute Order, No. 24STCV01337) ........ 9

*Casillas v. Traveler's Choice Travelware*
(LA. Sup. Ct. 24STCV01337) ........ 16

*Columbia Pictures Indus. v. Bunnell*,
2007 WL 2080419 (C.D. Cal 2007) ........ 9

*Daghaly v. Bloomingdales.Com, LLC*,
2024 WL 5134350 (9th Cir. Dec. 17, 2024) ........ 6, 7

*Dana Hughes v. Vivint*, *Inc., et al.*,
2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) ........ 6

*Earll v. eBay, Inc.*,
599 F. App'x 695 (9th Cir. 2015) ........ 14

*Eng. v. Gen. Dynamics Mission Sys., Inc.*,
2019 WL 2619658 (C.D. Cal. May 8, 2019), aff'd, 808 F. App'x 529 (9th Cir. 2020) ........ 14

*Hanley v. Int'l Ass'n of Machinists & Aerospace Workers*,
2022 WL 2117805 (C.D. Cal. June 1, 2022) ........ 15

*Heiting v. Taylor Fresh Foods, Inc.*
(July 28, 2024) L.A. Sup Court Case No. 24STCV12891 ........ 11

*Limon v. Circle K Stores Inc.*,
84 Cal. App. 5th 671 (2022) ........ 7

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 9, 10, 11

*Norwest Mortg., Inc. v. Superior Ct.*,
72 Cal. App. 4th 214 (1999) .......... 14

*People v. Giordano*,
42 Cal. 4th 644 (2007) .......... 8

*Perfect 10*, *Inc. v. Yandex N.V.*,
962 F. Supp. 2d 1146 (N.D. Cal. 2013) .......... 14

*SeeRules and Policies Regarding Calling No. Identification Serv.—Caller ID*,
9 F.C.C. Rcd. 1764 (1994) .......... 16

*Shah v. Fandom, Inc.*,
No. 24-cv-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .......... 9, 10

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) .......... 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 7

*Vicko Ins. Services v. Ohio Indem. Co.*,
70 Cal.App.4th 55 (1999) .......... 16

**Statutes**

Cal. Civ. Code § 1798.100-1798.199.100 .......... 13

Cal Pen. Code 638.50(c) .......... 10

Cal. Pen. Code
§ 637.2 .......... 7, 16
§ 638.55 .......... 16

Cal. Penal Code §§ 629.51, 638.50 .......... 12

Cal. Penal Code § 629.51(a)(2)(C) .......... 8

Cal. Penal Code § 630 .......... 10

Cal Penal Code § 638.51 ........ *passim*

Cal. Penal Code § 638.52(d)(1) ........ 11

California Consumer Privacy Act ........ 13

CCPA ........ 13

Copyright Act ........ 14

Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510 (1986) ........ 12

Trap and Trace Laws ........ *passim*

**Other Authorities**

U.S. Constitution Article III ........ 6, 7

# I. INTRODUCTION

Plaintiff's Opposition to BB OpCo's[1] Motion to Dismiss (the "Motion") only confirms that her theory is deficient as a matter of law. Plaintiff's claim that the TikTok software installed on BB OpCo's website is a trap and trace used in violation of California's criminal laws is not supported by any facts. More fundamentally, the Trap and Trace Laws do not and cannot apply to the website software at issue, as both the legislative history and statutory text confirm. Plaintiff spends much of her Opposition accusing BB OpCo of "speculation" for simply identifying the myriad defects in Plaintiff's pleading. This includes that Plaintiff did not even try to plead that the TikTok software captured dialing, routing, or signaling information reasonably likely to identify the source of a communication—the very essence of trap and trace device. *See* Cal Penal Code § 638.51.

Moreover, Plaintiff urges the Court to ignore the statutory text and legislative history's repeated reference to telephone lines and the absurd results that would ensue if court orders were required to implement standard website analytics tools.

In addition, Plaintiff is precluded from pursuing her claims because she improperly attempts to apply CIPA extraterritorially to BB OpCo, a Connecticut LLC that is not alleged to have engaged in any conduct in California. On this issue, Plaintiff nonsensically claims only Plaintiff's conduct is relevant in direct contravention of well settled California law. As to CIPA's private right of action, Plaintiff is simply wrong that it applies to the Trap and Trace Laws implemented three-decades after CIPA's initial enactment, which make no reference to CIPA's private right of action and has it own enforcement provisions.

Finally, the Amended Complaint fails for a fundamental threshold defect. Plaintiff does not have Article III standing to pursue her claims. Plaintiff does not and

[1] Defined terms have the same meaning as defined in BB OpCo's opening motion.

cannot explain any concrete injury caused by her visit to BB OpCo's website, and she ignores the multiple authorities in this District and this Circuit that have dismissed effectively identical claims for lack of standing. *See, e.g., Dana Hughes v. Vivint*, *Inc., et al.*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024); *Daghaly v. Bloomingdales.Com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024).

Plaintiff already amended her complaint once, but she failed to cure the fundamental defects in her claims. The Court should dismiss the Amended Complaint with prejudice.

## II. PLAINTIFF LACKS ARTCILE III AND STATUTORY STANDING TO PURSUE HER CLAIMS.

At a fundamental and threshold level, Plaintiff's Amended Complaint fails as a matter of law for lack of Article III and statutory standing. Plaintiff abjectly fails to plead an injury-in-fact as required under Article III of the U.S. Constitution because she fails to identify any harm, let alone a concrete one, stemming from her visit to BB OpCo's website. Plaintiff speculates about a purely hypothetical harm to her "privacy interest" that is never identified with specificity in her pleading. Aside from vague and undefined references to "device and browser information, geographic information, referral and url tracking" that the TikTok software may collect, there is not a single detail alleged concerning what information of Plaintiff's was collected, ***or any injury suffered as a result.***

Tellingly, Plaintiff fails to cite or otherwise respond to *Vivint*, *Inc., et al.*, where a court in this District dismissed a nearly-identical complaint for lack of Article III standing. Nor does Plaintiff address recent Ninth Circuit authority confirming that a plaintiff that complains of third-party website analytics software but alleges only that she visited a website, does not allege an injury and thus lacks standing. *Bloomingdales.Com, LLC*, 2024 WL 5134350, at *1. Because Plaintiff's Amended Complaint alleges nothing beyond the fact that she "visited" BB OpCo's website, her

Amended Complaint is indistinguishable. By not responding, Plaintiff effectively concedes she has no standing to pursue her claims.

Plaintiff instead tries to the muddy the waters by relying on transcripts of unrelated TikTok proceedings, that have nothing to do with BB OpCo's alleged use of the TikTok pixel on its website, and have no connection to Plaintiff whatsoever. As the Supreme Court has unequivocally established, Article III standing must involve an actual injury to Plaintiff herself that is traceable to Defendant; the Court should ignore Plaintiff's extraneous arguments as irrelevant. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021).[2]

## III. PLAINTIFF FAILS TO PLEAD A TRAP AND TRACE DEVICE.

Even if Plaintiff had standing to pursue her claims, she fails to plead the very essence of a trap and trace device. It is evident that Plaintiff only pays lip service to the statute's specific requirement that a trap and trace device (1) capture ***incoming electronic or other impulses*** (2) that identify the originating number or ***other dialing, routing, addressing, or signaling information*** (3) reasonably likely to ***identify the source*** of a wire or electronic communication, **but not the contents of a communication**. Cal Penal Code § 638.51. In particular, Plaintiff conflates all three requirements and bundles the various types of information to argue that they somehow satisfy the entirety of the definition, when they do not.

First, Plaintiff claims in her Opposition that she sufficiently pleads a qualifying trap and trace device under CIPA by alleging that the TikTok software captures "incoming electronic impulses" including "device and browser information, geographic information, referral tracking, and url tracking." (Opp. at 10:9-14.) But device and browser information, geographic information, and referral tracking are not

[2]Plaintiff likewise fails to plead statutory standing. Section 637.2 provides a private right of action only for a person "who has been injured by" a violation of one of its provisions. Cal. Penal Code § 637.2.

"electronic impulses"—the first requirement in the definition. Indeed, Plaintiff fails to argue exactly what in her Amended Complaint is meant to reference the "electronic impulses" and her Opposition evidently abandons her reliance on the indecipherable screenshot in paragraph 12 of the Amended Complaint—purporting to show "electronic impulses being sent to TikTok." (Am. Compl. ¶ 12.) As Plaintiff now effectively concedes, the screenshot shows no such thing.

Nor does the Opposition even try to explain how Plaintiff's allegations fall within the purview of dialing, routing, addressing, or signaling information to fit within the statute. Indeed, after erroneously claiming that "device and browser information, geographic information, referral tracking and url tracking" are somehow "electronic impulses," she completely ignores the second requirement that dialing, routing, addressing or signaling information be identified by such impulses. Plaintiff completely conflates the statutory requirements. To be clear, none of the information cited by Plaintiff as purportedly collected by the TikTok software fits either statutory element. Device and browser information, geographic information, and referral tracking are not signaling information as they do not fit within the same category as dialing, routing or addressing. *See People v. Giordano*, 42 Cal. 4th 644, 660 (2007) ("*Ejusdem generis* applies whether specific words follow general words in a statute or vice versa…[T]he general term or category is restricted to those things that are similar to those which are enumerated specifically.").

As to the third prong of the statute, requiring that information collected be "reasonably likely to ***identify the source*** of a wire or electronic communication," the Amended Complaint is equally deficient. Plaintiff concludes that "an individual's geographic location, IP address, zip code, cell phone type and model, browser information, and recently visited websites is the sort of information that is reasonably likely to identify an individual." (Opp. at 10:17-20.) But an IP address is excluded from the Trap and Trace Laws, as information required for internet functionality. *See*

*Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 (C.D. Cal 2007); *see also Casillas v. Transitions Optical, Inc. I* (Super. Ct. L.A. Cty., April 23, 2024 Minute Order, No. 23STCV30742). None of the other information alleged—a zip code, a phone type, and recently visited websites—could possibly identify or be likely to identify an individual anywhere.

The authorities cited by Plaintiff, including *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) and *Shah v. Fandom, Inc.*, No. 24-cv-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) do not compel a contrary result. *Moody* found that "device and browser information, geographic information, and browsing history" qualified as dialing routing, addressing, or signaling information because the defendant argued only that the "allegation [wa]s vague and conclusory but provide[d] no support for this argument." 742 F. Supp. 3d at 1077. In other words, unlike here, the defendant there effectively conceded the argument. Further, the court erred in determining that a device that collects contents of communications, even if dialing, routing, or signaling information are also collected, could qualify as a trap and trace device, insofar as the statue's text specifically excludes any technologies that capture the contents of communications. Cal Pen. Code 638.50(c) (a "Trap and trace device" does "not [capture] the contents of a communication."); *see also Shah v. Fandom, Inc.*, No. 24-cv-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) (following *Moody* and considering only pen registers, rather than a trap and trace device.[3]) *Shah* is also distinguishable as it addressed "tracking" on a user's device. 2024 WL

[3] *Shah*, like *Moody* and *Greenley*, also relied on Cal. Penal Code § 630 and its directive to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Shah v. Fandom, Inc.*, 2024 WL 4539577, at *4 (quotation omitted). However, as explained in the motion (and never addressed in any of *Shah, Moody, Greeley*, the Trap and Trace Laws are separate from CIPA. Mot. at 20-21, n.5, 23-25, ns. 7-8.

4539577, at *1. That is not the case here as Plaintiff claims BB OpCo installed the TikTok software on its own website, not on Plaintiff's device.[4]

## IV. PLAINTIFF FAILS TO PLEAD A QUALIFYING TELEPHONE LINE.

Although the statutory framework makes clear that a trap and trace device requires a device or process attached to a telephone line, Plaintiff urges the Court to ignore the statutory text and legislative history, and to blindly follow non-binding authorities that mistakenly applied the Trap and Trace Laws to website software. *See Heiting v. Taylor Fresh Foods, Inc. (*July 28, 2024) L.A. Sup Court Case No. 24STCV12891; *Moody,* 742 F. Supp. 3d at 1077. The statutory text and structure, however, confirm otherwise.

As explained in BB OpCo's opening Motion, the Trap and Trace Law's implementing sections make clear that for a trap and trace device to be employed, a telephone line is required. Subsection (d) of section 638.52 details specific information that must be included in a court order authorizing the use of a trap and trace device, including specifically a *telephone line* and *telephone number.* Specifically, a court order permitting the use of a trap and trace device must include "[t]he identity, if known, of the person to whom is leased or in whose name is listed ***the telephone line*** to which the . . . trap and trace device is to be attached." Cal. Penal Code § 638.52(d)(1) (emphasis added). The order must also include "[t]he ***number*** and, if known, physical location of the ***telephone line*** to which the . . . trap and trace device is to be attached." *Id.* § 638.52(d)(3) (emphasis added). Plaintiff does not bother to address these clear provisions in any manner and instead suggests the court

[4]If every website using various analytics and marketing tools were subject to criminal liability, it would lead to absurd outcomes. Website operators cannot obtain court orders to use such technology because they are not peace officers, and according to Plaintiff, they cannot obtain consent under section 638.51, which only allows consent as a defense for providers of electronic communication services, which Plaintiff argues BB OpCo is not. This interpretation would effectively criminalize common website practices, which is not a reasonable (or constitutional) result.

can simply ignore them because CIPA's definition of "electronic communication" confirms the Trap and Trace Laws apply to website software. This is non-sensical. Extending the definition of the "electronic communication" beyond telephonic communications in light of the express requirements for a telephone line in § 638.52 cannot be reconciled. Quite simply, a court would be unable to comply with section 638.52 if website technologies were construed as trap and trace devices.

In addition to this irreconcilable statutory conflict, nothing in the definition of electronic communication suggest that it intended to apply to internet communications. Indeed, the Trap and Trace Law's definition of "electronic communication" is the same definition used in the federal trap and trace law since 1986—before websites were even invented. *See* Cal. Penal Code §§ 629.51, 638.50; Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510 (1986). If the California legislature intended "electronic communication" to apply to website communications when it enacted the Trap and Trace Laws in 2015, it would have specifically stated.

Plaintiff's attempt to distinguish *Application of U.S. of Am. For an Order Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) as involving only federal pen register act is unpersuasive. The court's holding is directly analogous to the circumstances here and unequivocally held that "only devices that are attached to a telephone line" were covered by the statute's trap and trace provisions. *Id*.

### A. To The Extent the Statute Is Ambiguous, Legislative History Supports Defendant's Position.

Plaintiff urges the court to ignore the substantial legislative history that repeatedly references telephone lines and makes no reference whatsoever to website technologies. Indeed, the legislative history of sections 638.50-638.53 shows that the statute intended to authorize state and local law enforcement to use trap and trace

devices for telephone surveillance. Without any response for this undeniable conclusion, Plaintiff falls back on its specious "electronic communication" argument that has no merit.

Plaintiff likewise misconstrues the import of the comprehensive California Consumer Privacy Act ("CCPA") enacted specifically to govern the disclosure and sale of personally identifying information in marketing.[5] Plaintiff claims only generally that the CCPA does not "amend" or "repeal" the Trap and Trace Laws and should be "harmonized" with other laws. Plaintiff misses the point. The enactment of the CCPA does not in any way alter the Trap and Trace Laws, it merely demonstrates that the California Legislature never believed that the Trap and Trace Laws applied to website analytics tools to begin with.

## V. PLAINTIFF FAILS TO PLEAD BB OPCO INSTALLED THE TIKTOK PIXEL IN CALIFORNIA

Plaintiff concedes that it failed to plead that BB OpCo installed the TikTok pixel in California, and she does not dispute the well settled presumption against the extraterritorial application of California law unless that intent "is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.,* 51 Cal. 4th 1191, 1207 (2011). Plaintiff also does not contest that there is no legislative intent for CIPA to apply extraterritorially. Instead, Plaintiff argues without any support that it is sufficient for Plaintiff to have used BB OpCo's website in California. Plaintiff is wrong.

By focusing only on Plaintiff's access of the website in California, and even more irrelevantly TikTok's place of business in California, Plaintiff ignores the crucial elements of her claim are BB OpCo's alleged *installation or use* of a trap and trace

[5]The CCPA, enacted three years after section 638.51, regulates the collection of personal information by businesses, including email addresses, geolocation data, and a consumer's interaction with an internet website. *See* Cal. Civ. Code § 1798.100-1798.199.100.

device. *See* Cal. Penal Code § 638.51. As a practical matter, the location where the trap and trace device was installed is the triggering conduct forming the basis of Plaintiff's claims. That undisputedly occurred on BB OpCo's website. Plaintiff does not and cannot claim that this conduct occurred in California—it did not.[6]

Nothing about Plaintiff's visit to the website in California changes this result. To the contrary, California courts have repeatedly confirmed that a plaintiff's location has no bearing on the extraterritorial application of California laws to a defendant. *See Eng. v. Gen. Dynamics Mission Sys., Inc.*, 2019 WL 2619658, at *6 (C.D. Cal. May 8, 2019), aff'd, 808 F. App'x 529 (9th Cir. 2020) (dismissing claims seeking to apply California law extraterritorially where the plaintiff was a "California resident, received her pay in California, paid California income taxes, performed a significant amount of her work assignments in California, was terminated in California, and her HR representative was based in California") (cleaned up); *Hanley v. Int'l Ass'n of Machinists & Aerospace Workers,* 2022 WL 2117805, at *7 (C.D. Cal. June 1, 2022) ("Plaintiff's residency in California, and the fact that Plaintiff was in California when the termination decision was made and when he was informed of his termination, are insufficient to overcome the presumption against extraterritorial application of FEHA.").

## VI. THERE IS NO PRIVATE RIGHT OF ACTION.

Moreover, the Amended Complaint should also be dismissed because there is no private right of action under CIPA for violation of the Trap and Trace Laws. Plaintiff is wrong that courts have "universally" concluded that a private right of action applies to the Trap and Trace Laws. (*See* Opp. at 16:6-8.). Not so. *See Casillas*

---

[6] Courts typically look to the location of servers in determining the location of a website. See *Earll v. eBay, Inc.*, 599 F. App'x 695, 696 (9th Cir. 2015) (web services are not "an actual physical place"); *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1153 (N.D. Cal. 2013), as amended (Sept. 6, 2013) (dismissing complaint involving extraterritorial application of Copyright Act where website servers were not located in U.S.)

*v. Traveler's Choice Travelware* (LA. Sup. Ct. 24STCV01337) (dismissing complaint with prejudice and holding Section 638.51 does not carry a private right of action upon which Plaintiff's claim may be based").

Plaintiff's Opposition relies solely on Section 637.2's reference to "chapter" as necessarily encompassing the Trap and Trace Laws but fails to address the Motion's argument, which is not addressed in any case Plaintiff cites, that this term is ambiguous in context. *See* Mot. 23 at n.8. Plaintiff also ignores that Section 638.55 expressly provides remedies for violations of the Trap & Trace Laws and, unlike other provisions that were added after CIPA was initially enacted, makes no mention of section 637.2. Pen. Code § 638.55; Mot at 24 (citing Cal. Pen. Code § 632.5). Instead, Section 638.55 confirms that only the Attorney General is permitted to commence a civil action evidencing an intentional departure from Section 637.2. *Vicko Ins. Services v. Ohio Indem. Co.*, 70 Cal.App.4th 55, 66 (1999) (finding existing remedies "together with the absence of any reference to a private right of action" to be "strong evidence the Legislature did not intend to create such a private right to sue for damages"). Plaintiff's unsupported assumption thus fails to account for the entire statutory structure and legislative intent.

## VII. IN THE ALTERNATIVE, BB OPCO 21 IS AN ELECTRONIC COMMUNICATION SERVICES PROVIDER.

Finally, even if the Trap and Trace Laws could apply, BB OpCo is plainly exempt as an electronic communication service provider. Section 638.51(b) allows a provider of electronic or wire communication service to use a trap and trace device to "operate…a wire or electronic communication service" and "if the consent of the user of that service has been obtained." It is BB OPCo's—not Plaintiff's—consent required to employ the TikTok software on its own website. Indeed, courts have reached this precise result under analogous technologies and Plaintiff provides no compelling reason for website tools to be treated differently. *SeeRules and Policies*

*Regarding Calling No. Identification Serv.—Caller ID*, 9 F.C.C. Rcd. 1764 (1994) (addressing caller ID feature). The Amended Complaint should be dismissed with prejudice.

DATED: March 3, 2025 BLANK ROME LLP

By:/s/ Ana Tagvoryan
Ana Tagvoryan
Victor Sandoval
Attorneys for Defendant
BB OpCo LLC

The undersigned, counsel of record for BB OpCo, certifies that this brief contains 3,293 words, which complies with the word limit of this Court's procedures.

By:/s/ Ana Tagvoryan
Ana Tagvoryan